## VICTOR BEZE v. PRISCILLA CALVERT

### No. 32.

1. **Ambiguities—Defective Description.**—The rule is well settled that less indulgence will be shown in favor of descriptions in deeds based on compulsory sales, than applies to descriptions in deeds voluntarily executed by the owner. In compulsory sales under judicial process, if there is a patent ambiguity in the description of the land sold, it can not be aided by parol evidence, and the deed is void.

2. **Defective Description.**—In a sheriff's deed was the following description: "All the right, title, and claims of the said Mariana Rodriguez, in and to the aforesaid interest in the old Hernandez tract, the said interest being one-half of that part and portion of the said tract which was transferred to the Manchacas. The said part and portion being on the east bank of the San Antonio River, below

and adjoining the lands of the Arochas. Commencing at Pajaritos Creek and running down, and known as the Manchaca tract, the interest and half of the same above sold and herein conveyed being the upper half." Preceding this is a recital of a levy upon "an interest in a tract of land known as the old Hernandez tract, on the San Antonio River." This description is so ambiguous on its face as to render the deed attempting to convey land so described void.

APPEAL from Wilson.    Tried below before Hon. GEO. McCORMICK.

This suit was instituted by Priscilla Calvert et al. against Victor Beze et al. as an ordinary suit of trespass to try title to 2000 acres of land, situated in Wilson County, Texas.

This suit was filed May 14, 1885. On April 24, 1888, the heirs of John Cortez, appellants, intervened in the suit, claiming the land in controversy by right of inheritance from their said ancestor. There was a trial by jury and verdict and judgment for the land in favor of plaintiffs. The defendant and the intervenors appealed.

The following statement accompanied the opinion.

1. Plaintiffs and intervenors put in evidence a certified copy of a judgment of the District Court of Bexar County, Republic of Texas, in favor of John Cortez and against Mariano Rodriguez, for $2653.54, dated April 18, 1839.

2. Outside of the recitals in the sheriff's deed referred to in the succeeding finding, there is no proof of the issuance of the execution on the aforesaid judgment recited in said deed. It was shown that the files and records of the district clerk's office of said Bexar County had been examined, and no such execution could be found.

3. Plaintiffs and intervenors introduced in evidence an instrument in writing, in the form of a sheriff's deed, executed by J. C. Morgan, as deputy sheriff of said Bexar County, to Thomas M. Dennis, dated October 2, 1839. This deed discloses the name of the sheriff, and that Morgan was his deputy; recites the issuance of an execution on the aforesaid judgment on May 10, 1839, and a levy of same on and sale of the land hereinafter described and purported to be conveyed. The description in this deed of the land it purports to convey is as follows:

"All the right, title, and claims of the said Mariano Rodriguez in and to the aforesaid interest in the old Hernandez tract, the said interest being one-half of that part and portion of the said tract which was transferred to the Manchacas, the said part and portion being on the east bank of the San Antonio River, below and adjoining the lands of the Arochas. Commencing at Pajaritos Creek and running down and known as the Manchaca tract, the interest and half of the same above sold and herein conveyed being the upper half."

The only preceding recitals in this deed to the land sold are as follows: " Which said execution was by the said J. C. Morgan, deputy sheriff as aforesaid, levied upon divers real properties (there being no goods or

chattels to be found), to-wit:    *    *    *    and an interest in a tract of land known as the old Hernandez tract, on the San Antonio River;" and, "I, the aforesaid deputy sheriff and party of the first part in this indenture, did on the specified day offer the same, to-wit, the aforesaid interest in the Hernandez tract, for sale," etc.

This instrument was acknowledged before John S. Simpson, deputy clerk of Bexar County, without disclosing the name of his principal.

4. This instrument, so introduced, is a certified copy from the general records of Bexar County, certified to by the county clerk of said county.

Plaintiffs and intervenors put in evidence a certified copy of a power of attorney from Thomas M. Dennis to Joshua Threadgill, dated March 5, 1841, authorizing him to sell the land conveyed to him by the aforesaid sheriff's deed.

5. Plaintiffs and intervenors put in evidence a certified copy of a deed executed by Joshua Threadgill, as agent of Thomas M. Dennis, conveying what the deed states to be the same land, but which is further described as follows:   "The upper and undivided half of said tract of land as herein described, commencing at the northwest corner of said tract on the bank of said river, running down stream for one equal half of said tract; thence east in a parallel line with the northern line of said tract to the eastern line; thence north with the eastern line to the northeast corner of said tract; thence with the northern line to the place of beginning," to John Laplace as syndic of the estate of Juan Cortez. This deed was in trust for the benefit of Juan Cortez estate. This deed has no date, but was acknowledged and filed for record May 12, 1841.

6. Plaintiffs read in evidence a copy from the records of Natchitoches Parish, State of Louisiana, of a power of attorney from John Laplace to John Lawrence Generes, which is as follows:

"Before me, Charles E. Greneaux, parish judge and ex officio notary public in and for the parish of Natchitoches, State of Louisiana, and in presence of the undersigned witnesses, personally came and appeared John Laplace, of the same parish, who declared that in his capacity of syndic of the creditors of John Cortez, late of this parish, deceased, he does by these presents nominate, constitute, and appoint John Lawrence Generes, of San Antonio, county of Bexar, in the Republic of Texas, to be his true and lawful attorney in fact, giving unto him full power and authority for him and in his name as syndic as aforesaid, to ask, demand, sue for, and by all lawful ways and means recover and receive of and from all and every person or persons whomsoever all and every sum or sums of money due, owing, or coming to the estate of the said John Cortez in the said Republic of Texas, and all and every species of property, whether real or personal, rights or credits belonging to or claimed by the said estate; give all necessary receipts and discharges; compound, compromise, and arbitrate; appear before any court or courts of law or equity; plead,

answer, and reply, obtain judgments, cause the same to be executed, and enter satisfaction for the same; apply for and obtain for the purposes aforesaid all necessary orders and decrees of courts to receive property in payment of debts due the said estate, and sell, convey, and dispose of the same for the best interest of the said estate and upon such terms and conditions as he may think proper; appoint one or more attorneys under him with the like or more limited powers, and the same at pleasure to revoke; and generally to represent and act for the said John Laplace in his aforesaid capacity in all matters and things generally in which the estate of the said John Cortez may be concerned in the Republic of Texas, to all intents and purposes as though he were personally present; hereby ratifying and confirming all that his said attorney in fact may lawfully do or cause to be done in the premises by virtue of these presents.

" In testimony whereof, the said John Laplace has signed these presents in presence of me, said judge and notary, and of the undersigned witnesses, at my office, in the town and parish of Natchitoches, this thirteenth day of April in the year of our Lord one thousand eight hundred and forty-one.

[Signed]  " JOHN LAPLACE,
" Syndic of the creditors of John Cortez, deceased.

"Attest:
" J. ROUGINER,
" W. P. MORROW.

" C. E. GRENEAUX,
" Parish Judge and ex officio Notary Public."

7. Plaintiffs read in evidence a certified copy of a deed executed by said John Lawrence Generes as attorney in fact of John Laplace to John C. Hays, dated January 20, 1842, conveying land described as follows:

" Two thousand acres of land situated in the county of San Antonio, upon the northeast side of the San Antonio River, and bounded as follows, viz.: Beginning at a stake set for the lower corner of a survey of eight leagues of land known as the Arocha tract, at the mouth of the Pajaritos Creek; thence up the creek with its meanders and with the southeast boundary line of said survey, 2200 varas in a direct line, to a stake set on the said boundary line for the northwest corner of the Hernandez tract; thence with the back line of the said Hernandez tract south $61\frac{3}{4}°$ east 2460 varas to a stake; thence south 50° west 4850 varas to the San Antonio River; thence up the said river with its meanders to the place of beginning, the said lines extending to include 2000 acres."

8. Plaintiffs read in evidence a deed from John C. Hays to John Twohig, dated June 10, 1870, duly acknowledged on June 10, 1870, and recorded in the records of Bexar County, Texas, on June 14, 1870, in Book volume number 1, on pages 465 and 466, conveying to John Twohig, in trust for the special benefit of Mrs. Priscilla Calvert, Mrs. Mattie Shelby,

and Mrs. Mary Watkins, among other property, the following land, to-wit: "A tract of 2000 acres on the left bank of the San Antonio River, below and adjoining the Pajaritos Creek, which is part of the lower south-east boundary of the Arocha eight leagues grant, said tract being con-veyed to Hays by J. L. Generes, attorney in fact for John Laplace, on January 9, 1842, recorded in Book G, number 1, on pages 554–5."

9. Intervenors proved the following facts: Juan Cortez lived prin-cipally in Natchitoches, Louisiana, and died in the city of New Orleans in 1829. He was a merchant, and his business relations extended into Mexico and Texas. He took droves of horses to San Antonio and Mexico, and traded extensively about San Antonio. He left five children: (1) Marselate, who died in 1852, without issue. (2) John F. Cortez, who died in Mexico in 1843, leaving one son, Rene Edward Cortez; Rene Edward Cortez married Emma Davis, and died in February, 1879, leav-ing five children, who now live in Mississippi City, Mississippi, to-wit, Rene de Russey, age 15 years; Maria Neville, age 20 years; Emma Davis, age 17 years; and Marselite, age 9 years. (3) Benjamin V. Cortez was the third son of Juan Cortez; he married in 1866 and died in 1869, and left one son, Clement Cortez, whose age is now 19 years, and who lives in California with his mother, Caroline Cortez. (4) Josephine Clara Cortez was the fourth child of Juan Cortez; she married John Laplace, who died in 1863; she died in 1872. They left the following children: Benjamin, who died without issue many years since; Amelia Laplace, age 50 years, who lives in Natchitoches, Louisiana; Josephine Laplace, age 44 years; John Laplace, age 38 years—all living in Natchitoches, Louisiana. (5) The fifth child of Juan Cortez was Marie Adele Cortez; she married J. B. Carr, and died in 1848, leaving W. B. Carr and Marie E. O. Carr; Marie E. O. Carr married Dr. Kunneman in 1863 and is now living with her husband in Europe; W. B. Carr married in 1867, and died in 1882, leaving as his heirs John Carr, age 18; Emma Carr, age 17; Clara Carr, age 12; and Maria L. Carr, age 8 years—all of whom re-side in Louisiana with their mother.

10. Defendant read in evidence a special warranty deed from Mariano Rodriguez to Jean Beze, dated March 29, 1856, acknowledged before Sam S. Smith, clerk of the County Court of Bexar County, Texas, on April 23, 1856, and duly recorded, conveying unto said Jean Beze all that tract or parcel of land lying and being in the county of Bexar, about 35 miles below the city of San Antonio, and being more particularly described as follows, to-wit: "The tract of land herein conveyed, containing the quantity of 1200 acres and being taken from the upper or northwestern portion of that certain tract or parcel of land known and designated on the county map of Bexar County as survey number ——, in the name of John Laplace, and being a portion of the original Manchaca grant in the

forks of the San Antonio and San Bartolo or Cibolo; the said 1200 acres beginning at the southeastern mouth of the Pajaritos Creek; thence up said creek to the back line of said survey; thence southeast, following said creek line to a point from which a line going southwest parallel to above line on the Pajaritos will enclose 1200 acres, the limits to be surveyed." The warranty clause in said deed being as follows: "I hereby bind myself, my heirs, executors, and administrators, to warrant and defend the title to said premises against all persons lawfully claiming or to claim the same or any part thereof through, by, or under me, and no further."

11. Defendant proved that he is the only heir at law of Jean Beze, deceased.

12. The testimony does not sustain either plea of limitation, but does sustain the verdict for $300, the value of defendant's improvements. One reason why plea of five years statute of limitation is not sustained is, that it is not shown when the deed under which he claims was recorded.

13. The plaintiffs and defendant introduced in evidence certified copies from the records of the Court of Probate of Natchitoches Parish, State of Louisiana, showing a renunciation, in 1830, by the heirs of Juan Cortez, deceased, of their interests in his estate.

14. The said certified copies, as well as all other deeds and written instruments referred to or in evidence, are hereby referred to and made part of these findings.

15. If the deed from Morgan, as deputy sheriff, to Thomas M. Dennis conveyed the land sued for, and there was no error committed in admitting testimony, plaintiffs were entitled to recover.

*Devine & Smith* and *L. S. Lawhon,* for appellant.—1. In deraigning title under a judgment, the party asserting such title must not only produce the judgment, but also a valid execution and levy on the property sued for. Howard v. North, 5 Texas, 311; Criswell v. Ragsdale, 18 Texas, 444; Wofford v. McKinna, 23 Texas, 36; Sanger v. Trammell, 66 Texas, 361; Miller v. Alexander, 8 Texas, 44, 45.

2. A sheriff's deed must fully describe the land sought to be conveyed, or it is void for uncertainty; and it must be proven that the purchase money was actually paid; and such deed must be supported by a valid judgment, execution, and levy. Wofford v. McKinna, 23 Texas, 36; Steinbeck v. Stone, 53 Texas, 385; Norris v. Hunt, 51 Texas, 615; Knowles v. Torbitt, 53 Texas, 558; Davenport v. Chilton, 25 Texas, 518; Pressley v. Testard, 29 Texas, 201; Miller v. Alexander, 8 Texas, 44, 45.

*M. H. Carver, Lane & Mayfield,* and *B. F. Ballard,* for appellants (intervenors) Mary N. Cortez et al.

*John Ireland* and *James H. Burts*, for all the appellees.—1. The property sold was sufficiently described to identify it. The land was described as all the interest of Mariano Rodriguez in the old Hernandez tract, said interest being one-half of that part and portion of the said tract which was transferred to the Manchacas, the said part and portion being situated on the east bank of the San Antonio River, below and adjoining the lands of the Arochas, commencing at Pajaritos Creek and running down, and known as the Manchaca tract, the interest and half of the same sold, etc., being the upper half, by which the same could be identified. Berry v. Wright, 14 Texas, 270; Smith v. Hughes, 23 Texas, 248–250.

2. The land is held by appellees by and through ancient instruments from the judgment down, and all presumptions should and will be indulged in their favor. Leland v. Wilson, 34 Texas, 90; Tucker v. Murphy, 66 Texas, 355; Storey v. Flanagan, 57 Texas, 649; Holmes v. Coryell, 58 Texas, 680; Cox v. Cock, 59 Texas, 521; 1 Greenl. Ev., secs. 20, 21, 144, and notes.

KEY, Associate Justice.—This is an action of trespass to try title, commenced May 14, 1885, by Priscilla Calvert, Mattie Shelby, Alfred Shelby, and Mary Watkins, against Victor Beze, John Twohig, Angel Martinez, and Benito Lopez. The plaintiffs' petition described the land sued for as follows: "Two thousand acres of land in Wilson County, Texas, bounded and described as follows, to-wit: Beginning at the lower corner of the Arocha eight leagues grant, at the mouth of the Pajaritos Creek; thence up said creek with its meanders, and with the southeast boundary line of said survey, 2200 varas to a stake set on said line for the northwest corner of Hernandez survey; thence with the back line of Hernandez survey south 61° east 2460 varas to a stake; thence south 50° west 4850 varas to the San Antonio River; thence up said river with its meanders to the beginning."

The defendants Lopez and Beze filed pleas of not guilty and five and ten years statutes of limitations. Defendant Martinez disclaimed, and before trial plaintiffs dismissed as to defendant Twohig.

Mary N. Cortez, Rusu de Cortez, Jennie Davis Cortez, Amelia Laplace, Josephine Summars, Alice Laplace, Clemente Cortez, John Carr, Emma Carr, Clara Carr, Maria Carr, and Maud Evite Kunneman intervened, and claimed the land as the heirs of Juan Cortez.

October 12, 1888, J. B. Dibrell, administrator of the estate of the plaintiff Priscilla Calvert, made himself a party plaintiff.

December 3, 1889, plaintiffs and intervenors dismissed as to defendant Lopez.

The cause was tried, and upon a verdict of a jury to that effect, judgment was rendered for plaintiffs for the land, and for defendant Victor

Beze for $300, the value of his improvements.   The latter and the intervenors have prosecuted appeals.

The briefs of appellant and intervenors present a number of questions; but we decide the case on one point only.

The deed executed by J. C. Morgan, as deputy sheriff of Bexar County, to Thomas M. Dennis, dated October 2, 1839, constitutes a link in the chain of title upon which the plaintiffs and the intervenors rest their claims to the land involved.   The introduction of this deed in evidence was objected to by appellant Victor Beze, because of its failure to describe the land in controversy.   Error is assigned upon the action of the court in overruling this objection.

The deed describes the land which it purports to convey as follows: "All the right, title, and claims of the said Mariano Rodiguez in and to the aforesaid interest in the old Hernandez tract, the said interest being one-half of that part and portion of the said tract which was transferred to the Manchacas; the said part and portion being on the east bank of the San Antonio River, below and adjoining the lands of the Arochas, commencing at Pajaritos Creek and running down, and known as the Manchaca tract, the interest and half of the same above sold and herein conveyed being the upper half."

The only preceding references in this instrument to the land it purports to convey are contained in the following extracts therefrom:   "Which said execution was by the said J. C. Morgan, deputy sheriff as aforesaid, levied upon divers real properties (there being no goods or chattels found), to-wit: * * *   and an interest in a tract of land known as the old Hernandez tract on the San Antonio River," and, "I, the aforesaid deputy sheriff and party of the first part in this indenture, did on the specified day offer the same, to-wit, the aforesaid interest in the Hernandez tract, for sale."

The rule is well settled, that less indulgence will be shown in favor of descriptions of property contained in deeds based on compulsory sales under judicial process than applies to descriptions given in deeds and other instruments voluntarily executed by the owner of the property. And in the former class of cases, if there is a patent ambiguity in the description of the land, it can not be aided by parol evidence, and the deed is void.   Wofford v. McKinna, 23 Texas, 36; Norris v. Hunt, 51 Texas, 615; Mitchell v. Ireland, 54 Texas, 301; Wooters v. Arledge, 54 Texas, 395.

In our opinion, the description contained in the deed under consideration involves more than one patent ambiguity, which, considered in the aggregate, render it void for uncertainty.   For instance, it does not name the county, state, or other political division wherein the land is situated; it does not give the name of the original survey of which the land con-

veyed is a part, but merely calls it "the old Hernandez tract;" it describes the land conveyed as "one-half" of the portion of said Hernandez tract transferred to the Manchacas, without disclosing whether the "one-half" so conveyed is a segregated moiety of, or an undivided interest in, the whole of the Manchaca tract; it calls it one-half the portion which was transferred to the Manchacas, but fails to show when or by whom it was transferred, and to how many and which of the Manchacas the transfer was made, and the quantity of land so transferred to them; and gives. no other means of identifying the Manchaca land than the statement that it is on the east bank of the San Antonio River, below and adjoining the lands of the Arochas, commencing at Pajaritos Creek and running down, and known as the Manchaca tract.  And the final clause, "the interest. and half of the same above sold and herein conveyed, being the upper half," is equally as uncertain.  If "the interest" constitutes the upper half, it is difficult to perceive how "half of the same" can also be the upper half.  And the word "upper" may mean up the river, up the creek, or the natural ascent of the land.

The plaintiffs and intervenors having failed to show any title in either of them to the land in controversy, and for which they are suing, the judgment of the District Court will be reversed, and judgment here rendered, that they take nothing by their suit and pay all costs of both courts.

*Reversed and rendered.*

Delivered January 11, 1893.